**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PAMELA K. ROEHL )
)
Plaintiff, )
) No. 11 C 4886
v. )
) Judge James B. Zagel
ROBERT D. MERRILEES, et al., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

Plaintiff Pamela K. Roehl brings this suit under 42 U.S.C. § 1983 alleging deprivations of

her Fourth and Fourteenth Amendment rights against Defendants Robert D. Merrilees, James L.

Rubens, the Village of Wilmette, the Village of Evanston, and Officers Betz, Collins, Ockrim,

Keeler and an unknown Evanston police officer.  Plaintiff also brings several related state law

claims.  Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure

12(b)(6).

For the reasons explained below, Defendants' motions are granted in part and denied in part.

**II.      FACTUAL BACKGROUND**

Plaintiff is a resident of the Village of Wilmette.  Pursuant to a Joint Parenting

Agreement ("JPA"), Plaintiff and Defendant Merrilees agreed to take their children to see Dr.

Gail Grossman on alternating Mondays and Tuesdays.  October 12, 2010 was a date both parties

agreed that Plaintiff would take the children to Dr. Grossman.

On the afternoon of October 12, 2010, Plaintiff picked up the children from McKenzie

School, pursuant to her understanding of the JPA.  Despite the agreement, Defendant Merrilees

attempted to prevent Plaintiff from taking the children to their scheduled appointment with Dr. Grossman. After the alleged altercation, Plaintiff proceeded directly to the Wilmette Police Station to report the incident and file assault charges.

At the Wilmette Police Station, Officer Betz refused to process Plaintiff's complaint or initiate an investigation, explaining that the Police Department did not get involved in custody issues. Officer Betz instructed Plaintiff to leave and return with a hard copy of the JPA. Plaintiff offered to email a copy of the JPA to Officer Betz from her phone. However, Officer Betz refused this offer and instructed Plaintiff to return with a hard copy of the JPA.

Plaintiff informed Officer Betz that she was taking her children to their appointment with Dr. Grossman and would return with a copy of the JPA in the evening. Officer Betz agreed to this course of action, advising Plaintiff to take her children to see Dr. Grossman and return with the JPA after the scheduled appointment.

After Plaintiff left the Wilmette Police Station, Officer Betz called Defendant Merrilees. Merrilees told Officer Betz that he believed Plaintiff had illegally or improperly picked up the children from school. Defendant Rubens, Merrilees' attorney, contacted Officer Betz and related, both verbally and in writing, that Plaintiff had illegally or improperly picked up the children from school.

Based on the representations of Defendants Merrilees and Rubens, Officer Betz called Dr. Grossman and instructed her to separate the Plaintiff and children. Officer Betz also instructed Dr. Grossman to prevent Plaintiff from leaving the office, either alone or with the children. Plaintiff attempted to contact the Wilmette Police Station to inform the officers that she could no longer return to the station with a copy of the JPA because Dr. Grossman would not

allow her to leave. Dr. Grossman and her staff then separated the Plaintiff and children and detained all of them in Dr. Grossman's private office until Defendants arrived.

Wilmette Officers Betz, Ockrim and Collins, along with Evanston Police Officers Keeler and an unknown officer, arrived at Dr. Grossman's office with Defendant Merrilees. Defendant Merrilees took the children from Dr. Grossman's office. Defendant officers then arrested Plaintiff for child abduction and transported her to the Wilmette Police Station, where she was detained in excess of twenty-five hours.

The States Attorney's Office rejected the Defendant Officers' request for a charge of kidnapping against the Plaintiff because of an "absence of evidence which supported the statutory element of intent" and "inconsistencies between the Field General Report and subsequent follow-up interviews."

## III.   STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In order to survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss, the Court treats all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). The issue on a motion to dismiss is the legal sufficiency of the complaint and not the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). However, plaintiff has an obligation to provide "enough facts to state a claim to relief that is plausible on its face" and that "raises a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007); *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009).

Defendant Officers also assert a defense of qualified immunity as to certain claims. The relevant standard of that defense is discussed below.

## IV.    DISCUSSION

### A.    False Arrest, 42 U.S.C. § 1983

Plaintiff alleges false arrest against Defendants Village of Wilmette, Village of Evanston, Wilmette Police Officers Betz, Ockrim, and Collins, and Evanston Police Officers Keeler and an unknown officer. Plaintiff asserts that Defendant Officers never had probable cause to arrest and detain Plaintiff because the facts and circumstances within their knowledge were not sufficient to warrant a prudent officer to believe that Plaintiff had committed or was committing an offense.

> 1.    *Plaintiff States a Claim for False Arrest Against Officer Betz but Fails to State a Claim against all Other Individual Officers*

Defendant Officers assert a defense of qualified immunity against Plaintiff's allegation of false arrest under § 1983. The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Siliven v. Ind. Dep't of Child Servs.,* 635 F.3d 921, 925-26 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "In other words, the doctrine protects public officials who act in ways they reasonably believe to be lawful, and thus leaves ample room for mistaken judgments." *Id.* (internal citations omitted).

Qualified immunity claims present two questions: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 231. Courts

are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Once a defense of qualified immunity is offered, it becomes the Plaintiff's burden to make out the constitutional deprivation and that such right was clearly established. *See Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009). To overcome a defense of qualified immunity, the injured party must show that the constitutional right in question is clearly established "in a particularized sense." *Id.* at 478-79. "The relevant inquiry in determining whether a right is clearly established is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Reher v. Vivo*, 656 F.3d 772, 775 (7th Cir. 2011). "Where the law is open to interpretation, qualified immunity protects police officers who reasonably interpret an unclear statute." *Id.*

An arrest is "constitutionally invalid" unless the arresting officer had "knowledge and trustworthy information sufficient to warrant a prudent man in believing [the detainee] had committed or was committing an offense." *Joseph v. Rowlen*, 402 F.2d 367, 369 (7th Cir. 1968) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (explaining that "[w]hether [an] arrest was constitutionally valid depends…upon whether, at the moment the arrest was made, the officers had probable cause to make it)).

Plaintiff asserts that Defendant Officers lacked probable cause to arrest and detain her given the facts and circumstances of the situation. "The determination of whether an arresting officer has probable cause to arrest an alleged offender turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed."

*Sow v. Fortville Police Dep't*, 636 F.3d 293, 301 (7th Cir. 2011) (citing *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000)). "Therefore, the inquiry 'depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief.'" *Id.* at 301 (citing *Woods*, 234 F.3d at 987).

Moreover, "when a defense of qualified immunity has been raised, [the court will] determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). In other words, the inquiry is whether the police officer had "arguable" probable cause. *Id.* Arguable probable cause exists when "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (internal citations omitted).

According to the facts asserted by Plaintiff, Defendant Officers arrested and detained Plaintiff based on the representations made by Defendants Merrilees and Rubens. Police officers are "with some qualifications, entitled to rely on allegations by credible eyewitnesses when these supply probable cause." *Id.* at 777 (citing *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir.2006)). As Defendant officers point out in their motion, even a "report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods*, 234 F.3d at 996. Moreover, "allegations by eyewitnesses supply probable cause when the statements, if true, show that a crime has occurred. It does not matter…whether the accused person denies the allegations. Police need not conduct an investigation but may arrest and let prosecutors and

courts determine who is telling the truth." *Askew*, 440 F.3d at 895.

However, there are limits to the principle that an arresting officer may rely on the statements of eyewitnesses. For instance, "when…the police know that the accuser may harbor a grudge against the accused…then some follow-up may be required to make an arrest 'reasonable.'" *Id.* "An officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Likewise, as the Seventh Circuit explained in *BeVier v. Hucal*, "[a] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." 806 F.2d 123, 128 (7th Cir. 1986).

In *BeVier*, a police officer arrested parents for child neglect pursuant to a statute that required knowing or willful conduct. 806 F.2d at 126. The *BeVier* court explained that the officer therefore needed some evidence that the parents knew of their children's predicament and failed to prevent it. *Id.* The arresting officer had no such evidence; to the contrary, he knew that the parents had taken their children to the hospital for diaper rash and had hired a babysitter to care for them. *Id.* Ultimately, the court found that it was unreasonable not to question the parents, Red Cross Center personnel or babysitter prior to arresting the parents for child neglect. *Id.* at 127. Furthermore, the *BeVier* court rejected the arresting officer's claim of immunity because "no reasonably well-trained officer could have come to [the arresting officer's] conclusion, viewing the situation objectively." *Id.* at 128.

Similar to the statute in *BeVier*, child abduction under 720 ILCS 5/10-5(b)(1) requires intentional conduct in which the perpetrator "[i]ntentionally violates any terms of a valid court order granting sole or joint custody, care, or possession to another by concealing or detaining the

child or removing the child from the jurisdiction of the court." Like the officer in *Bevier,* Officer Betz had no evidence that Plaintiff was intentionally concealing or detaining her children. In fact, he had ample reason to know otherwise—Plaintiff informed Betz where she was taking the children and when she would return to the police station.

Plaintiff has pled adequate facts to show that a reasonable officer in Betz's position would have known further investigation was needed before making an arrest. Plaintiff demonstrated that she had no intention of abducting or detaining the children in violation of a court order, but meant to enforce her rights under the JPA. She initiated contact with the police to assert her parental rights, took her children to their scheduled appointment with Officer Betz's approval and agreed to return with a hard copy of the JPA after the appointment. Moreover, Officer Betz successfully located Plaintiff and her children exactly where Plaintiff said they would be – Dr. Grossman's office.

Officer Betz also had reason to believe that the accuser in this situation "*may* [have] harbor[ed] a grudge against the accused." *Askew*, 440 F.3d at 895 (emphasis added). Defendant Officers assert that "plaintiff makes no allegations that Officer Betz was aware of the plaintiff and Mr. [Merrilees] long, drawn out divorce and custody battle." Nonetheless, Officer Betz *was aware* that: (1) Plaintiff and Mr. Merrilees recently had an argument at the McKenzie School concerning the children and JPA; (2) that Plaintiff attempted to file assault charges against Mr. Merrilees; and (3) that Plaintiff wished to assert her rights under the JPA against Mr. Merrilees. That is more than enough to signal to a reasonable officer that Merrilees' accusations alone did not establish probable cause.

Accepting the facts pled as true and drawing all reasonable inferences in Plaintiff's favor,

the complaint alleges sufficient facts to show that a reasonable officer in Betz's position could not have reasonably believed—knowing what he did about the custody dispute and Plaintiff's representations of her intention to return to the police station after taking her children to their regularly scheduled appointment—that no further investigation was necessary before making an arrest for kidnapping. Here, as in *BeVier*, the officer had no information to suggest Plaintiff had the requisite intent to kidnap, and plenty of facts that should have led him to know otherwise. At the very least, questioning those present at Dr. Grossman's would have been a "reasonable avenue of investigation…[to] clarify the situation." *McBride,* 576 F.3d at 707. At this point, Officer Betz is not entitled to qualified immunity; the claim against him for false arrest survives.

But Plaintiff has pled no facts to show why it was unreasonable for the other defendant officers to rely upon the representation of probable cause made by Defendant Betz. "Under the 'collective knowledge' doctrine, the officers who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of other officers." *U.S. v. Nicksion*, 628 F.3d 368, 376 (7th Cir. 2010). No facts are alleged to show that the other officers had knowledge of the JPA, the earlier altercation between Plaintiff and Defendant Merrilees, or the fact that Plaintiff had explained to Betz that she was taking her children to a regularly scheduled appointment and would return to the station afterwards. Without some facts to show that it was unreasonable to rely on Betz's representation that probable cause existed, the false arrest claims cannot stand against the other individual officers.

2. *Plaintiff Fails to State a Claim for False Arrest Against Villages of Wilmette and Evanston*

To the extent Plaintiff alleges constitutional violations against the Villages of Wilmette and Evanston, Plaintiff fails to state a claim for which relief can be granted.

9

"[T]he doctrine of respondeat superior is not available to a plaintiff in a section 1983 suit." *West By and Through Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997). A municipality can be liable under § 1983 only "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 (1978). Plaintiff also "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

"[W]here rules or regulations are required to remedy a potentially dangerous practice, [a municipality's] failure to make a policy is also actionable." *Id.* (citing *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir.1990)). However, "inaction in response to misconduct of its employees may result in municipal liability but only where the injury is caused by "faults 'systemic in nature,'" *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986) (citing *Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir.1985)). More specifically, "there must be evidence of a course of events or circumstances that permit an inference of deliberate indifference or tacit authorization of the offensive acts." *Id.* at 205 (citing *Lenard v. Argento*, 699 F.2d 874, 886 (7th Cir. 1983)).

Plaintiff's complaint fails to plead that the Villages of Wilmette and Evanston adopted a policy, practice or custom which caused her deprivation of constitutional rights. Nor does Plaintiff plead inaction by Villages of Wilmette and Evanston in adopting a policy in the face of

"a potentially dangerous practice." *See Thomas,* 604 F.3d at 303. Plaintiff fails to make even

conclusory allegations against the Defendant Villages. *Diaz v. Hart,* 2010 WL 849654, at *7

(N.D.Ill. 2010) (explaining that conclusory allegations suffice "so long as facts are pled that put

defendants on proper notice of the alleged wrongdoing").

Accordingly, Plaintiff's claims for false arrest under § 1983 against Defendant Villages

Wilmette and Evanston are dismissed.

A.      False Imprisonment, 42 U.S.C. § 1983

1. *Plaintiff Fails to State a Claim for False Imprisonment against Defendant Wilmette Officers*

Defendants Village of Wilmette and Officers argue that Plaintiff's false imprisonment

claim is subsumed by her false arrest claim, and that she is not entitled to recovery on both

causes of action. A false imprisonment claim "seeks damages for injury caused by the plaintiff's

detention without probable cause." *National Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th

Cir. 2010). It arises under the Fourteenth Amendment and stems from the distinct injury of

being deprived of liberty without due process of law, as opposed to being the subject of an

unreasonable seizure. *See generally Baker v. McCollan*, 443 US 137 (1979).

That said, the Seventh Circuit has explained that the "Fourth Amendment governs the

period of confinement between arrest without a warrant and the preliminary hearing at which a

determination of probable cause is made, while due process [and the Fourteenth Amendment

regulate] the period of confinement after the initial determination of probable cause." *Lopez v.

City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006) (citing *Villanova v. Abrams*, 972 F.2d 792,

797 (7th Cir. 1992); *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir.1999) (Fourth Amendment

applies before the probable cause hearing and Due Process Clause applies after)). The *Lopez*

court held that "Because Lopez was arrested without a warrant and had not yet been presented for a probable cause hearing, the Fourth Amendment should have been applied to his claim relating to the treatment and conditions he endured during his four days and nights in warrantless detention." *Id.*

Because Plaintiff's confinement never reached a preliminary hearing for probable cause, the Fourteenth Amendment was not triggered. As in *Lopez,* the Fourth Amendment covers both Plaintiff's arrest and confinement up to a preliminary hearing for probable cause. So while false arrest under § 1983 does not subsume false imprisonment, as Defendants aver, Plaintiff has failed to plead sufficient facts to state a claim for false imprisonment.

This does not mean, of course, that no remedy is available for the twenty-five hour period during which Plaintiff claims she was wrongfully confined. It simply means that the detention will be considered as part of the Fourth Amendment reasonability analysis (i.e. the severity of the Fourth Amendment injury), rather than serve as grounds for a separate cause of action. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1351 (7th Cir. 1985) (". . . the reasonableness requirement of the Fourth Amendment does carryover past arrests to place limits of permissible duration upon [pre-hearing] detention.").[1]

Accordingly, Defendants' motion to dismiss the claim of false imprisonment is granted.[2]

---

[1] Ultimately, it is to Plaintiff's advantage to have her confinement treated as part of the Fourth Amendment injury rather than a separate injury arising under the Fourteenth Amendment. It is easier to satisfy the Fourth Amendment's "objectively unreasonable" test than the state of mind requirements of the Fourteenth Amendment. *See Lopez,* 464 F.3d at 718.

[2] Only the individual Wilmette officers responsible for confining Plaintiff can be held liable for this portion of the alleged Fourth Amendment injury. Plaintiff does not allege that any of the other officers were involved in the confinement, nor does she allege the confinement was pursuant to a policy practice or custom.

A.  Conspiracy to Violate 42 U.S.C. § 1983

"To establish § 1983 liability through a conspiracy, a plaintiff must [establish that] (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011).  Moreover, "a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).  Under Illinois law, the agreement must be "to accomplish either an unlawful purpose or a lawful purpose by unlawful means." *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

"Although a conspiracy certainly may be established by circumstantial evidence, [the court has] stressed that such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).  Furthermore, as Defendants note, conspiracy claims have been held to a higher pleading standard.  *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).  The *Cooney* court explained that "the height of the pleading requirement is relative to the circumstances." *Id.*

1. *Plaintiff Fails to State a Conspiracy Claim Against Defendants Merrilees and Rubens Among Themselves*

To the extent that Plaintiff alleges a conspiracy between Defendants Merrilees and Rubens, Plaintiff fails to meet the first requirement of the test articulated in *Logan* – that a *state official* and a private individual reach an understanding.  Defendants Merrilees and Rubens are not "state officials" nor did they act "under the color of state law." 42 U.S.C. § 1983.

Accordingly, Plaintiff's claim of a conspiracy to violate § 1983 by Defendant Merrilees and Rubens is dismissed.

2. *Plaintiff Fails to State a Claim of Conspiracy Against All Defendants*

Plaintiff's conspiracy claim against the remaining defendants must also fail. Plaintiff cites *Walker v. Thompson* in support of her assertion that her complaint is legally sufficient because she has pled "at a bare minimum…the parties to the conspiracy, its general purpose and the approximate date of the conspiracy." 288 F.3d 1005, 1007-08 (7th Cir. 2002). But *Walker* was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, which impose a plausibility standard on all pleadings.

Here, Plaintiff alleges the parties, purpose and date of the conspiracy, but fails to allege facts or circumstances upon which either an express or implied agreement between Defendants could be inferred "above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff makes only a bare allegation that "Defendants conspired to arrest and detain Plaintiff and deprive her of her civil rights." But as the *Cooney* court explained, "Even before [the Supreme Court decisions in *Twombly* and *Iqbal*], a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim." 583 F.3d at 971 (citing *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006); *Walker v. Thompson*, 288 F.3d 1005, 1007–08 (7th Cir. 2002); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991)). More to the point, before "defendants become entangled in discovery proceedings" in a case alleging a "vast, encompassing conspiracy…plaintiff must meet a high standard of plausibility." *Id.* Plaintiff's complaint fails to meet that standard here. Therefore, her claim alleging conspiracies to violate § 1983 against all Defendants is dismissed.

A.                    Failure to Intervene, 42 U.S.C. § 1983

Plaintiff alleges failure to intervene under § 1983 against all Defendant Officers.  In

*Chavez v. Illinois State Police,* the court explained that:

> An officer who is present and fails to intervene to prevent other law enforcement
> officers from infringing the constitutional rights of citizens is liable under § 1983
> if that officer had reason to know: (1) that excessive force was being used, (2) that
> a citizen has been unjustifiably arrested, or (3) that any constitutional violation
> has been committed by a law enforcement official; and the officer had a realistic
> opportunity to intervene to prevent the harm from occurring.

251 F.3d 612, 652 (7th Cir. 2001) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)).

An officer may be held liable under § 1983, even as a bystander, if the plaintiff can show

the officer: "(1) had reason to know that a fellow officer was using excessive force or

committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent

the act from occurring."  *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (citing *Chavez,*

251 F.3d at 652).

Plaintiff fails to state a claim for failure to intervene for the same reason she has failed to

state a claim for false arrest against the individual officers other than Betz—no facts are pled to

show the other individual officers had reason to know Betz was committing a constitutional

violation.  The claim is dismissed as to all Defendants.

E.        State Law Claims

1.  *Plaintiff States a Claim for Negligent Infliction of Emotional Distress Against
    Officer Betz but no other Individual Officers*

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must

show that "(1) defendant owed plaintiff a duty; (2) defendant breached that duty; and (3)

plaintiff's injury was proximately caused by that breach."  *Howell v. Joffe*, 483 F.Supp.2d 659,

667 (N.D.Ill. 2007) (citing *Parks v. Kownacki*, 737 N.E.2d 287, 297 (Ill. 2000)).  Whether a defendant owes a duty to the plaintiff is a question of law. *Id.*  In determining whether defendant owed a duty to the plaintiff, Illinois courts consider "various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties." *Id.* (citing *Corgan v. Muehling,* 574 N.E.2d 602, 606 (Ill. 1991)).  Here, Plaintiff alleges that she suffered emotional distress from both being arrested without probable cause in front of her children and from being separated from her children.  Drawing all reasonable inferences in Plaintiff's favor, Officer Betz knew that Plaintiff was with her children and could have foreseen the injury caused by arresting Plaintiff without probable cause in front of her children.  Moreover, Officer Betz could have reasonably guarded against the injury.  Therefore, he owed Plaintiff a basic duty of care.

Defendant Officers move to dismiss Plaintiff's NIED claim on the grounds that they are immune under § 2-201 of the Tort Immunity Act. 745 ILCS 10/2-201.  Section 2-201 immunizes public employees from liability for injuries "resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.*  More specifically, "Section 2-201 bars a plaintiff's claim if the action leading to plaintiff's injury involved both a policy decision and a discretionary act."  *McDonald v. Camarillo*, 2010 WL 4483314, *2 (N.D.Ill. 2010) (citing *Harinek v. 161 North Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998); *see also Kevin's Towing, Inc. v. Thomas,* 814 N.E.2d 1003, 1007 (Ill.App.Ct. 2004) ("employee's act or omission leading to the alleged injury must be both a policy determination and an exercise of discretion").

"A policy decision is one that requires the public employee to balance competing

16

interests and make a judgment call as to which course of action would best serve those interests." *Id.* (citing *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 281 (Ill. 2003)). Plaintiff's complaint does not allege that the Defendant Officers were exercising policymaking authority. Similar to the determination in *Salgado v. Doe*, the Defendant Officers "are alleged to have executed or violated policies, not to have formulated them." 2009 WL 2972477, *3 (N.D.Ill. 2009) (citing *Torres v. City of Chicago*, 123 F.Supp.2d 1130, 1134 (N.D.Ill. 2000); *Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848 (Ill. 2001)).

Based on Plaintiff's facts, if immunity is to apply, it must stem from § 2-202. 745 ILCS 10/2-202. Under § 2-202, a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *Id.* The Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Therefore, in order to sufficiently state an NIED claim that escapes the Tort Immunity Act, Plaintiff must plead facts that show Defendant Officers acted willfully and wantonly.

In *Remblake v. County of Will*, the court dismissed the plaintiff's NIED claim on the grounds that Illinois courts have not recognized a tort of willful and wanton conduct. 2010 WL 3732146 (N.D.Ill. 2010). The *Remblake* court relied in part on *Ziarko v. Soo Line Railroad*, in which the Illinois Supreme Court held that "[t]here is no separate and independent tort of 'willful and wanton' misconduct." *Id.* (citing *Ziarko v. Soo Line Railroad*, 641 N.E.2d 402 (Ill. 1994)); *see also Rhyan v. City of Waukegan,* 2011 WL 2110184, *3 (N.D.Ill. 2011) (granting summary

judgment against plaintiff's separate count for "willful and wanton conduct claims").

Additionally, other district courts have held that willful and wanton conduct is incompatible with negligence. *See Terrell v. City of Kankakee*, 2007 WL 4531802, *3 (C.D.Ill. 2007) ("Under Illinois law, claims of willful and wanton or intentional conduct are inconsistent with claims of negligence); *Dornhecker v. Ameritech Corp.,* F.Supp.2d 918, 931 (N.D.Ill. 2000) ("In the negligence context, the court notes that under Illinois law, intentional or malicious breaches of ordinary care rise to the level of intentional or willful and wanton conduct, and are inconsistent with an allegation of ordinary negligence").

However, this analysis fails to consider that the Illinois Supreme Court's analysis in *Ziarko* and the statutory definition of "willful and wanton conduct" contemplate conduct ranging from intentional to aggravated forms of negligence. In *Ziarko*, the court found that a "defendant found guilty of willful and wanton conduct may seek contribution from a defendant found guilty of ordinary negligence if the willful and wanton defendant's acts were found to be *simply reckless*, and thus were determined to be less than intentional conduct." *Ziarko*, 641 N.E.2d at 408 (emphasis added). On the other hand, the court found that a defendant whose actions amounted to *intentional* behavior should not be authorized to contribution. *Id.* As such, the court acknowledged that there may be "willful and wanton acts that are reckless, rather than intentional." *Id.* Specifically, "conduct characterized as willful and wanton may be proven where the acts have been less than intentional – i.e., where there has been 'a failure to discover the danger through…carelessness when it could have been discovered by the exercise of ordinary care.'" *Id.* at 406 (citing *Schneiderman v. Interstate Transit Lines, Inc.* 69 N.E.2d 293, 300 (Ill. 1946)).

As the court in *Perez v. Town of Cicero* explained, "the Illinois Supreme Court recently reiterated that…willful and wanton conduct 'is regarded as an aggravated form of negligence.'" 2011 WL 4626034, *9 (N.D.Ill. 2011) (citing *Krywin v. Chi. Transit Auth.,* 938 N.E.2d 440, 452 (Ill. 2010)); *see also Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 692 (7th Cir. 2011) ("willful and wanton negligence claim").  Moreover, under Illinois law, to state a claim for willful and wanton conduct "a plaintiff must establish the same basic elements of a negligence claim…[with] the additional requirement that the breach be not merely negligent, but with 'conscious disregard for the welfare of the plaintiff.'" *Doe-2 v. McClean County Unit Dist. No. 5 Bd. of Dir.,* 593 F.3d 507, 515 (7th Cir. 2010) (citing *Ortega-Piron ex rel. Doe v. Chi. Bd. of Educ.,* 820 N.E.2d 418, 423 (Ill. 2004)).  Therefore, an NIED claim can clear the Tort Immunity Act if sufficient facts are pled to show that the alleged negligence was aggravated.

Here, Plaintiff alleges adequate facts to show Officer Betz's negligence was aggravated. But as with the false arrest and failure to intervene claims, no facts are alleged to show that the other officers' actions were anything but perfectly reasonable.  Accordingly, Defendant Officers' motion to dismiss Plaintiff's NIED claim is denied as to Officer Betz and granted as to all other individual officers.

2.  *Plaintiff Fails to Plead Sufficient Facts to State a Claim for NIED against Defendant Villages of Wilmette and Evanston*

Plaintiff's claim for NIED centers on the facts of her arrest and detention by the Defendant Wilmette and Evanston Officers.  Plaintiff pleads no facts to establish that the Villages of Wilmette and Evanston proximately caused her to suffer emotional distress. Moreover, Plaintiff's complaint fails to plead facts that show Defendant Villages acted wantonly. Accordingly, Plaintiff's claim of NIED against Defendant Villages of Wilmette and

19

Evanston is dismissed.

### 3. *Plaintiff States a Claim for NIED Against Defendants Merrilees and Rubens*

Defendants' motion to dismiss Plaintiff's claim of NIED is denied.

### 4. *Plaintiff States a Claim for Intentional Infliction of Emotional Distress Against Defendant Merrilees*

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff "must show that (1) the [defendant's] conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). Plaintiff has adequately pled these elements. Accordingly, Defendant's motion to dismiss Plaintiff's IIED claim is denied.

### 5. *Plaintiff Fails to State a Claim of Abuse of Process by Defendant Merrilees*

"Under Illinois law, an abuse of process claim requires proof of two elements: (1) existence of an ulterior motive or purpose; and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 372 (7th Cir. 1998) (citing *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill.App.Ct. 1998)). In *Rubloff Development Group, Inc. v. Supervalu, Inc.,* the court explained that:

> "Process" is not used here in the general sense—as in "the legal process" of suing someone, prosecuting the case, receiving judgment, etc. Rather it is used in the literal, legal sense of something *issued by the court*. "'Process' is issued by the court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants."

2012 WL 1032784, *12 (N.D.Ill. 2012) (emphasis added) (citing *Commerce Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 749 (Ill.App.Ct.1994)). Illinois courts have defined "process" as "any means used *by the court* to acquire or to exercise its jurisdiction over a person or over specific property." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1174 (Ill.App.Ct. 2004) (emphasis added) (citing *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill.App.Ct. 1972) ("precisely" defining "process")). Specifically, process "is issued by the court." *Id.*

Plaintiff has failed to adequately plead the second element required in an abuse of process claim. Accordingly, Defendants' motion to dismiss Plaintiff's claim for abuse of process is granted.

### 6. *Indemnity Claim Pursuant to 745 ILCS 10/9-102*

Section 9-102 directs municipalities "to indemnify its employees and pay any compensatory damages 'for which it or an employee while acting within the scope of his employment is liable.'" *Sassak v. City of Park Ridge*, 431 F.Supp.2d 810, 822 (N.D.Ill. 2006). Furthermore, the Seventh Circuit has held that a plaintiff may "seek a judgment against the municipality that would take effect when and if judgment against its employees was entered" and that "there was no benefit in requiring a plaintiff to initiate a separate proceeding against the municipality." *Id.* (citing *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997)).

Relying on *Wilson,* courts have "permitted section 9-102 claims to be filed prior to finding any municipal employee liable." *Id.* (citing *Savin v. Robinson*, 2001 WL 1191192, *2, (N.D.Ill. 2001); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 895 n. 1 (N.D.Ill. 2000) ("Indeed, the [Wilson] court also held that the plaintiff need not wait until he obtains a judgment against the individual officer to bring his claim against the municipality under section 9-102");

*Brown v. King*, 767 N.E.2d 357, 362-63 (Ill. 2001) (concluding that prejudgment reliance on section 9-102 is not premature)); *see also Blancas v. Village of Rosemont,* 2008 WL 4682217, *2 (N.D.Ill. 2008).

Plaintiff has stated a state law tort claim against Defendant Officers acting within their scope of employment, and therefore may include a claim for indemnity against the Defendant Villages. Therefore, Defendants' motion to dismiss Plaintiff's indemnity claim is denied.

7. *Plaintiff States a Claim for Respondeat Superior Liability for State Law Claims Against Individual Officers*

Plaintiff's final claim is against Defendant Villages of Wilmette and Evanston for *respondeat superior* liability for the Defendant Officers tortious actions. Plaintiff has sufficiently pled her state law claim for NIED, and therefore has sufficiently pled her claim for *respondeat superior. See Steinbach v. Village of Forest Park,* 2009 WL 2605283, *6 (N.D.Ill. 2009). As the Court explained in *Steinbach*, "an employer may be liable for the negligent, willful, malicious or even criminal acts of its employees when such acts are committed in the course of employment." *Id.* (citing *Webb v. Jewel Cos*., 485 N.E.2d 409, 411 (Ill.App.Ct. 1985)); *see also Brown v. King,* 767 N.E.2d 357, 360 (Ill.App.Ct. 2001) ("as a general rule, a municipality may be held liable for the tortious acts of police officers acting in the scope of their employment"). Accordingly, Defendants' motion to dismiss Plaintiff's claim for *respondeat superior* liability is denied.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to the claims for (1) false arrest against Officers Collins, Ockrim, Keeler, the unknown Evanston officer and the Villages of Wilmette and Evanston; (2) false imprisonment; (3) conspiracy to

violate 42 U.S.C. §1983; (4) failure to intervene; (5) negligent infliction of emotional distress against Officers Collins, Ockrim, Keeler, the unknown Evanston officer and the Villages of Wilmette and Evanston; and (6) abuse of process.

The motion to dismiss is denied as to the claims for (1) false arrest against Officer Betz, (2) negligent infliction of emotional distress against Officer Betz, Defendant Merrilees and Defendant Rubens; (3) intentional infliction of emotional distress against Defendant Merilees; (4) indemnity; and (5) *respondeat superior* liability as to the state law claims.

ENTER:

James B. Zagel
United States District Judge

DATE: April 10, 2012